FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.
★ DEC 19 2011
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
:
NICHOLAS MINUCCI, :  **MEMORANDUM**
: **DECISION AND ORDER**
                  Petitioner, :
: 11 Civ. 3433 (BMC)
    - against - :
:
THOMAS LAVALLEY, :
:
                  Respondent. :
-------------------------------------------------------------- X

**COGAN**, District Judge.

    Petitioner brings this habeas corpus proceeding under 28 U.S.C. § 2254 challenging his state court conviction for assault and robbery as hate crimes, possession of stolen property, and weapons possession. He raises two points of error in this habeas corpus petition: insufficiency of the evidence and prosecutorial misconduct through improper questioning of witnesses. I hold that part of his prosecutorial misconduct claim is procedurally barred, and the state court's decision as to the remainder of that claim, as well as the insufficiency of the evidence claim, is not contrary to or an unreasonable application of Supreme Court authority. The petition is therefore denied.

## BACKGROUND

    In the early morning of June 29, 2005, a long-time acquaintance of petitioner named Francis Agostini encountered petitioner while petitioner was driving in Howard Beach with another friend named Anthony Ench. Agostini told petitioner that "some niggers tried to get at [steal] his chain [i.e., a piece of jewelry]." Petitioner replied that he had seen "some niggers

scheming in the hood earlier," and Agostini got into petitioner's car to search for them. They passed two black men who Agostini said were not the ones who had tried to rob him, but when petitioner drove around the block, the two black men had been joined by a third, and Agostini identified the three as his attempted assailants. Petitioner yelled out, "Where you niggers think you going?"

Petitioner stopped the vehicle and jumped out with an aluminum softball bat in his hand. The black men – Glenn Moore, Richard Pope, and Richard Walker – took off running, and petitioner chased after them, yelling additional racial epithets. He threw the bat, which landed on the street. Petitioner retrieved the bat, got back into his car, and gave further chase. When petitioner cornered Moore, petitioner and his two accomplices chased him on foot. Moore fell while trying to get away, and petitioner and/or his accomplices punched and kicked Moore on the ground. Petitioner then struck Moore in the head with the bat as petitioner continued to yell racial slurs.

Ench took Moore's sneakers and a bag he was carrying, and they drove off in petitioner's car. The men searched Moore's bag and petitioner said he liked Moore's sneakers and claimed them for himself.

The police arrived at the scene, and after interviewing Pope and Walker at the police precinct, they drove the two men through the neighborhood (Moore had been taken to the hospital). Pope identified petitioner's car, and the police took petitioner in for questioning and gave him *Miranda* warnings. The police recovered the bat and Moore's sneakers and other personal belongings from petitioner's car.

Petitioner initially denied that he had been out at the time of the attack, but upon being confronted with an inaccuracy in his story, petitioner claimed that he had been assaulted by three

black men. Petitioner then stated that he had gone after his assailants with his friend Ench, and that upon catching the three black men, he had hit one who had tripped with a bat. Petitioner agreed to write down his statement, this time stating that he had hit the man in his back and legs with the bat, and that the man had hit his head on the ground after tripping. He also added that he had taken the man's sneakers.

Petitioner then voluntarily repeated and embellished upon his account on audiotape and videotape. In both statements, petitioner explicitly denied hitting anyone in the head with a bat and repeated that the man had hit his head on the ground after tripping over a driveway divider. He also attributed the theft of the sneakers to Ench. On video, petitioner placed the incident in the context of "black kids" coming to Howard Beach to commit crimes against "white kids," and recounted a stabbing incident as an illustration of that. Nevertheless, petitioner denied a racial motivation for his attack, saying he played basketball with black people, and he would have had the same response to the attempted robbery regardless of the race of his attackers.

Moore sustained two skull fractures, one extending into his auditory canal, and bleeding in the brain. The prosecution's medical experts opined that these were new injuries sustained by a great deal of recently applied force and that Moore had numerous continuing brain deficits consistent with the attack. The defense's expert opined that Moore's head injury was consistent with him falling and inconsistent with being hit with a bat "at full speed." Further, the expert stated that Moore's brain deficits were the result of head trauma Moore suffered long before the incident.

A jury convicted petitioner of first and second degree robbery as hate crimes, second degree assault as a hate crime, three counts of possession of stolen property, and weapons possession. It acquitted him of two counts of first-degree assault, one as a hate crime, and two

counts of first degree robbery, one as a hate crime. The court sentenced petitioner to concurrent determinate sentences totaling 15 years. The Appellate Division affirmed the conviction and the New York Court of Appeals denied leave to appeal. See People v. Minucci, 68 A.D.3d 1017, 891 N.Y.S.2d 436 (2d Dep't 2009), leave to appeal denied, 14 N.Y.3d 843, 901 N.Y.S.2d 149 (2010).

## DISCUSSION

Each of petitioner's two points of error is discussed respectively below.

### I. Insufficient Evidence

Petitioner challenged the sufficiency of the evidence on appeal in two respects and renews them both here. First, he contends that the evidence was insufficient to show that the crimes were motivated by race or color and thus he should not have been convicted of hate crimes. Second, he contends that the evidence showed that it was solely Ench, not him, who stole Moore's shoes, and thus petitioner could not be guilty of robbery.

The Appellate Division rejected petitioner's claims on the merits. As to the evidence of hate crimes, the Appellate Division held that there was "overwhelming evidence that the crimes at issue were motivated in substantial part by the defendant's belief and perception regarding race or color . . . ." People v. Minucci, 68 A.D.3d at 1018, 891 N.Y.S.2d at 438. His challenge to the sufficiency of the evidence as to the robbery was rejected as one of his "remaining contentions" that was found to be "without merit or [did] not require reversal." Id.

Because this is a habeas corpus proceeding under 28 U.S.C. § 2254, my task is not to determine whether the Appellate Division was correct or incorrect in the result that it reached. Rather, I can only grant relief if I determine that the state court's decision:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). As the Supreme Court recently confirmed in Harrington v. Richter, — U.S. —, 131 S. Ct. 770, 786 (2011), "[s]ection 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." Id.; see also Cavazos v. Smith, 132 S. Ct. 2 (2011).

The instant petition is properly analyzed under the first prong of this statute, as petitioner challenges certain of the Appellate Division's legal conclusions, rather than its factual determinations. See Dunlap v. Burge, 583 F.3d 160, 164 (2d Cir. 2009). Under this prong, a state court's application of law must have been more than "incorrect or erroneous"; it must have been "objectively unreasonable." Sellan v. Kuhlman, 261 F.3d 303, 315 (2d Cir. 2001) (citation and internal quotations omitted). Federal habeas corpus relief is appropriate only in cases "where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." Harrington, 131 S. Ct. at 786. The Supreme Court could hardly have imposed a narrower standard, requiring a state prisoner to show that "the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 786–87.[1]

---

[1] Harrington and Cavazos may have abrogated the oft-quoted language in Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000), that while "some increment of incorrectness beyond error is required . . . the increment need not be great; otherwise habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." The Harrington/Cavazos standard may not quite require "judicial incompetence," but by precluding relief except where the error is "beyond any possibility for fairminded disagreement," it certainly comes close. The Second Circuit has already noted that these Supreme Court decisions have narrowed the standard of habeas review that the Circuit previously applied. See Rivera v. Cuomo, No. 10-224-pr (2d Cir. Dec. 16, 2011) (granting motion to

5

As is often the case in habeas corpus review, petitioner's burden is doubly difficult. He not only faces the narrow standard of review described above, but the issue he has raised – insufficiency of the evidence – itself is already subject to a narrow standard of review. In reviewing the sufficiency of the evidence to support a conviction, the inquiry is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979) (emphasis in original). Thus, even when "faced with a record of historical facts that supports conflicting inferences, [the habeas court] must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." Wheel v. Robinson, 34 F.3d 60, 66 (2d Cir. 1994) (quoting Jackson, 443 U.S. at 326). Relief on a sufficiency claim cannot be granted unless the record is "so totally devoid of evidentiary support that a due process issue is raised." Bossett v. Walker, 41 F.3d 825, 830 (2d Cir. 1994) (citation and internal quotation marks omitted).

In sum, to obtain relief on an insufficiency claim, Harrington and Jackson, read together, require a finding that both the jury's verdict and the state court's review of the jury's verdict represent conclusions by each that at least border on the factually and legally irrational, respectively. Petitioner cannot come close to making that difficult showing here.

When considering the sufficiency of the evidence of a state conviction, "[a] federal court must look to state law to determine the elements of the crime." Quartararo v. Hanslmaier, 186 F.3d 91, 97 (2d Cir. 1999). To be convicted of a hate crime under New York law, a racial basis does not have to be the sole motivating factor for the crime. New York Penal Law

---

vacate its earlier decision granting habeas relief upon consideration of Cavazos), vacating 649 F.3d 132 (2d Cir. 2011).

6

§ 485.05(1)(b) requires intent to commit a crime "in whole or substantial part because of a belief or perception regarding the race" of the victim. The statute thus allows a mixed motive to form the basis of a hate crime conviction as long as the racial motivation was "substantial."

Petitioner argues that if he was really looking for black people to attack, he would not have driven by the first two black people he saw, but would have stopped and attacked on his first opportunity. He contends that the fact that he drove by the black men when Agostini initially declined to identify them as his assailants shows that petitioner was looking for the men that attempted to rob Agostini, whatever their race.

There seems to be little doubt that petitioner was looking for Agostini's alleged assailants, but there was much evidence that this was not his sole motivation. His racially-charged comments before, during, and in the police station after the attack could rationally be interpreted by a jury as indicating a special interest in exacting retribution against Moore because he was black, and as indicating that the victim's race was a substantial motivating factor. The jury was far from irrational in concluding that petitioner was motivated in substantial part by his victim's race, and the Appellate Division's decision to that effect was not an unreasonable application of Supreme Court authority, as defined by Jackson and Harrington.

With regard to the robbery of the shoes, there was again more than sufficient evidence to show that petitioner acted in support of Ench in taking the shoes and with the same intent as Ench. New York law requires no more. Penal Law § 20.00 provides that when one person commits a crime, "another person is criminally liable for such conduct when, acting with the mental culpability required for the commission thereof, he . . . importunes or intentionally aids such person to engage in such conduct." The jury was presented with sufficient evidence to find that here. Petitioner's language urged Ench on and ridiculed Moore as having "learned [his]

7

lesson" after Ench took Moore's sneakers. In addition, petitioner's laying a claim to the sneakers and keeping them in his car after the robbery could be viewed by the jury as showing that he shared Ench's intent and aided him in the robbery. Finally, striking Moore in the head with a baseball bat after the shoes were stolen made it exceedingly unlikely that Moore was going to be able to recover his shoes and thus assisted the theft. The Appellate Division's affirmance of the jury's verdict was not an unreasonable application of Jackson as the jury could have rationally reached the conclusion that it did.

## II. Prosecutorial Misconduct

Petitioner raises a due process claim by reason of two instances of prosecutorial misconduct.

### A. Reference to Prior Conduct

The first claim of misconduct is hard to discern because petitioner describes it vaguely in his petition, he did not raise it in state court, and neither petitioner nor respondent has directed the Court to the location in the voluminous trial transcript where the alleged misconduct occurred. Petitioner supports his challenge by citing a pretrial ruling in which the trial court granted in part and denied in part the prosecutor's motion to cross-examine petitioner, if he testified, with regard to certain conduct that may have been the subject of sealed Family Court proceedings. Petitioner did not take the stand at trial.

This Court has reviewed the trial transcript and concludes that petitioner is referring to the cross-examination of two character witnesses called by petitioner. Those witnesses offered their opinion as to petitioner's reputation in the community for lack of bias against blacks or, as recast by the trial judge, a reputation for fair-mindedness. The prosecutor's cross-examination of

each witness included asking the witness if he was aware that petitioner, shortly after the attacks on September 11, 2001, had fired paintball pellets at a Sikh woman as she entered a temple to pray for the victims while yelling accusations such as "you [expletive deleted] Indians" killed "our people," and further inquiring as to whether that information changed the witness' opinions (it did not). Petitioner's trial counsel succeeded in having the form of the question revised, but he does not appear to have objected to its substance as character witness impeachment. In the instant habeas corpus proceeding, petitioner apparently contends for the first time that by allowing this cross-examination, the trial court violated its own pretrial ruling and the prosecutor deprived him of due process.

Putting aside the fact that these questions do not seem inconsistent with the trial court's pretrial ruling and that petitioner's counsel did not object to the substance of the questions, petitioner has failed to exhaust his claim that the prosecutor violated his right to due process of law. "An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). To satisfy this requirement, a petitioner must fairly present the federal claim in state court. See Strogov v. Att'y Gen. of N.Y., 191 F.3d 188, 191 (2d Cir. 1999). "A petitioner has 'fairly presented' his claim only if he has 'informed the state court of both the factual and the legal premises of the claim he asserts in federal court.'" Dorsey v. Kelly, 112 F.3d 50, 52 (2d Cir.1997) (quoting Daye v. Att'y Gen. of N.Y., 696 F.2d 186, 191 (2d Cir. 1982) (*en banc*)).

In some cases, the failure to exhaust will result in dismissal of the federal habeas petition without prejudice to refiling after final adjudication of the federal claim in state court. See generally Rhines v. Webber, 544 U.S. 269, 125 S. Ct. 1528 (2005). However, if state courts

would refuse to hear the claim because there is no longer an avenue to pursue it under state law, then the federal habeas court will deem the claim procedurally barred based on the certainty that the state court would do the same. See Bossett, 41 F.3d at 828–29. If the federal court reaches that conclusion, then it cannot consider the merits of the claim, but must preclude it by the same procedural bar that the state courts would impose; to do otherwise would eviscerate the exhaustion requirement. See Aparicio v. Artuz, 269 F.3d 78, 89–90 (2d Cir. 2001).

That is the case here. The claim of prosecutorial misconduct was not presented on appeal, and under New York procedural law, such a claim would be deemed waived. See Jones v. Keane, 329 F.3d 290, 296 (2d Cir. 2003); Bossett, 41 F.3d at 829. This procedural default could be excused if petitioner could demonstrate cause and prejudice, see id.; Artuz, 269 F.3d at 90, but petitioner has not attempted to demonstrate either. Nothing prevented petitioner from raising this on-the-record claim on direct appeal, as the prosecutor's questions and the trial court's rulings are apparent in the transcript. The claim is therefore procedurally barred.

### B. Cross-Examination of Music Industry Expert

At trial, petitioner called as an expert witness a black attorney and producer in the entertainment and hip-hop music industries to testify that the term "nigger" or its dialectical variants is not necessarily derogatory but depends on the context in which it is used. The apparent purpose of the testimony was to cast reasonable doubt as to whether a racial motive could be inferred by petitioner's repeated use of that term in connection with his attack on Moore. On cross-examination, the prosecutor sought to show that the expert was wholly unfamiliar with the facts of the case or anything about petitioner, which the expert readily acknowledged; he was there only to give an opinion independent of the incident. In the course of

asking questions regarding the expert's lack of familiarity, the prosecutor asked the witness if he ever travels to Howard Beach at night by himself. The expert replied that he had.

Petitioner's counsel objected and requested a curative instruction on the ground that the prosecutor's question implicitly asked the jury to infer that racism in Howard Beach is pervasive, and that petitioner, as a resident of that neighborhood, should be seen as sharing that racism. The trial court sustained the objection, and instructed the jury that it was irrelevant whether the witness traveled to Howard Beach and that it should disregard the question and answer.

Petitioner argued on direct appeal that this question amounted to a due process violation based on prosecutorial misconduct, which the Appellate Division rejected on the merits. My review of that ruling is therefore constrained by the narrow standard of 28 U.S.C. § 2254(d) discussed above. Moreover, petitioner is again faced with a double hurdle because prosecutorial misconduct that is sufficiently serious to warrant habeas corpus relief requires satisfaction of an exacting standard. To prevail, a petitioner must demonstrate that the prosecutor's comments "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Darden v. Wainwright, 477 U.S. 168, 181, 106 S. Ct. 2464 (1986) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643, 94 S. Ct. 1868 (1974)). Only "egregious" prosecutorial misconduct can give rise to a constitutional claim. See Miranda v. Bennett, 322 F.3d 171, 180 (2d Cir. 2003) (quoting Donnelly, 416 U.S. at 647–48). "In determining whether the prosecutor's comments cause[d] prejudice, [a] court considers three factors: '(1) the severity of the misconduct, (2) the measures adopted to cure the misconduct, and (3) the certainty of conviction absent the improper statements.'" Dunn v. Sears, 561 F. Supp. 2d 444, 457 (S.D.N.Y. 2008) (quoting United States v. Thomas, 377 F.3d 232, 245 (2d Cir. 2004)).

11

Taking into account these factors, petitioner has failed to establish a due process violation. First, the misconduct was not particularly severe. The objected-to question was sandwiched between a number of other questions that pointed to the witness's lack of knowledge of the specifics of the case, and could readily have been understood as an attempt (which turned out to be unsuccessful) to make that same point. Specifically, the objectionable question was preceded by the question, "Do you know if [petitioner] ever did anything for bigoted reasons?", to which the witness answered that he did not. The objectionable question was quickly followed, even before defense counsel's objection, by the question "do you even know if [petitioner] listens to hip-hop?", to which the witness again denied knowledge. In addition, perhaps to the prosecutor's surprise, the witness answered that he does in fact travel to Howard Beach alone at night, thus dispelling any suggestion of pervasive racism that might have been implicit in the question.

Regarding the second factor, the trial court took exactly the curative action defense counsel asked it to take – sustaining the objection, advising the jury that it was irrelevant whether the witness traveled to Howard Beach, and directing it to disregard the exchange. Finally, it is hard to see how the question could possibly tilt the scales against the petitioner to the extent of causing a conviction that would not have otherwise occurred, which is required to warrant habeas corpus relief. See Thomas, 377 F.3d at 245; United States v. Elias, 285 F.3d 183,192 (2d Cir. 2002); Osorio v. Conway, 496 F.Supp.2d 285, 301 (S.D.N.Y. 2007). Thus, the Appellate Division's rejection of this claim was not contrary to or an unreasonable application of Supreme Court authority.

## CONCLUSION

The petition is denied and the case is dismissed. A certificate of appealability shall not issue. 28 U.S.C. § 2253(c). Further, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. Coppedge v. United States, 369 U.S. 438, 444–45, 82 S. Ct. 917 (1962).

**SO ORDERED.**

U.S.D.J.

Dated: Brooklyn, New York
       December 19, 2011